## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA BOOTH, on Behalf of Herself and All Others Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | CASE NO. 2:13-cv-05968-RBS |
| | : | |
| v. | : | |
| | : | |
| BMO HARRIS BANK, N.A., FIRST INTERNATIONAL BANK & TRUST, a North Dakota State-Chartered Bank, and NORTH AMERICAN BANKING COMPANY, a Minnesota State-Chartered Bank, | : | |
| | : | |
| Defendants. | : | December 18, 2013 |

### [PROPOSED] ORDER GRANTING DEFENDANT NORTH AMERICAN BANKING COMPANY'S MOTION TO COMPEL ARBITRATION

Upon consideration of North American Banking Company's motion to compel arbitration, the accompanying memorandum of law, plaintiff's response thereto, any reply briefs filed, any oral argument held, and the record and evidence before the Court, it is hereby ORDERED that, good cause having been shown, Defendant First North American Banking Company's motion to compel arbitration is GRANTED in its entirety. All claims against Defendant North American Banking Company are HEREBY dismissed and shall be arbitrated.

SO ORDERED this ___ day of _____, 2014.

_____
HON. R. BARCLAY SURRICK
United States District Judge

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA BOOTH, on Behalf of<br>Herself and All Others Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | CASE NO. 2:13-cv-05968-RBS |
| | : | |
| v. | : | |
| | : | |
| BMO HARRIS BANK, N.A.,<br>FIRST INTERNATIONAL BANK & TRUST,<br>a North Dakota State-Chartered Bank, and<br>NORTH AMERICAN BANKING COMPANY,<br>a Minnesota State-Chartered Bank, | : | |
| | : | |
| Defendants. | : | December 18, 2013 |

## DEFENDANT NORTH AMERICAN BANKING COMPANY'S MOTION TO COMPEL ARBITRATION

Plaintiff Patricia Booth is subject to a valid and binding arbitration agreement that requires her to arbitrate all of her claims alleged against North American Banking Company ("NABC"). Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, NABC respectfully moves this Court to compel arbitration of Booth's claims against NABC and to dismiss this action or, in the alternative, to stay this action pending arbitration. This motion is supported by the accompanying Memorandum of Law, the Declaration of Peter Schwingler and all exhibits thereto, and any reply memorandum that NABC may file.

As set forth more fully in the accompanying Memorandum of Law, Booth entered into a valid and binding arbitration agreement with Plain Green, LLC, a non-party, that covers all claims asserted in this action. The agreement extends to Booth's claims against NABC because NABC is a third-party beneficiary of the agreement, Booth alleges that NABC was acting as Plain Green LLC's agent, and/or Booth is equitably estopped from refusing to arbitrate her claims relating to her loan agreement.

WHEREFORE, Defendant requests that the Court grant this motion, order Plaintiff Booth to arbitrate her claims against NABC, and dismiss this action against NABC in its entirety or, in the alternative, stay the claims against NABC pending arbitration.

Defendant NABC respectfully requests oral argument on this motion.

Respectfully Submitted,

DEFENDANT NORTH AMERICAN BANK COMPANY

Todd A. Noteboom (PA # 308557)
Peter J. Schwingler (*Pro hac vice*)
LEONARD, STREET AND DEINARD
   Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
(612) 335-1500
(612) 335-1657 fax
todd.noteboom@leonard.com
peter.schwingler@leonard.com

and

James T. Moughan (PA # 33045)
BRITT, HANKINS & MOUGHAN
Two Penn Center Plaza
Ste. 515
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-569-6936
215-569-3711 fax
jmoughan@britthankins.com

*Its Attorneys*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA BOOTH, on Behalf of Herself and All Others Similarly Situated, | : : : | |
| Plaintiff, | : : | CASE NO.  2:13-cv-05968-RBS |
| v. | : : | |
| BMO HARRIS BANK, N.A., FIRST INTERNATIONAL BANK & TRUST, a North Dakota State-Chartered Bank, and NORTH AMERICAN BANKING COMPANY, a Minnesota State-Chartered Bank, | : : : : : | |
| Defendants. | : | December 18, 2013 |

## DEFENDANT NORTH AMERICAN BANKING COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    I.    Plaintiff Agrees to Arbitrate All Claims Related to Her Loan from Plain Green.................................................................................................. 2

    II.    Plaintiff Agrees to Repay the Loan Through ACH Transactions ........................... 5

    III.    Plaintiff Files Suit Against NABC, Asserting Claims Based on the July 2013 Loan ................................................................................................. 5

ARGUMENT ................................................................................................. 6

    I.    The FAA Mandates Arbitration of This Dispute ................................................. 7

        A.    Plaintiff Voluntarily Entered a Binding Arbitration Agreement ................ 8

        B.    The Arbitration Agreement Encompasses Plaintiff's Claims.................... 9

        C.    Plaintiff Must Raise Any Disputes About the Validity, Scope, or Enforceability of the Arbitration Agreement Before the Arbitrator ......... 10

    II.    NABC Is Entitled to Enforce the Arbitration Agreement...................................... 12

        A.    NABC Is a Third-Party Beneficiary of the Arbitration Agreement........... 12

        B.    As an Alleged Agent of Plain Green, NABC Is Entitled to Enforce the Arbitration Agreement ........................................................................ 14

        C.    Plaintiff Is Estopped from Avoiding Arbitration of Her Claims Against NABC ............................................................................................ 16

    III.    The FAA Requires Dismissal or a Stay Pending Arbitration. ............................... 20

CONCLUSION................................................................................................. 20

## TABLE OF AUTHORITIES

## CASES

*Ariza v. Autonation, Inc.*, 317 F. App'x 662 (9th Cir. 2009) ............................ 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ................. 11

*Bannett v. Hankin*, 331 F. Supp. 2d 354 (E.D. Pa. 2004) ................................. 16

*Bird Peak Corp. v. Lawyers Title Ins. Corp.*, 107 F. App'x 240 (2d Cir. 2004) ........... 8

*Buckeye Check Cashing, Inc. v Cardegna*, 546 U.S. 440 (2006) ......................... 7

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513
   (3d Cir. 2009) .............................................................................. 7, 9

*Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170 (E.D. Pa. 2010) ........... 7, 9, 10, 19

*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005) ..................... 12

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ................................. 7

*Denney v. BDO Seidman, LLP*, 412 F.3d 58 (2d Cir. 2005) ............................ 18

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries, S.A.S.*,
   269 F.3d 187 (3d Cir. 2001) ............................................................. 17

*Fluke v. Cashcall, Inc.*, Civ. No. 08-5776, 2009 WL 1437593 (E.D. Pa. May 21, 2009) .......... 8

*Friedman v. Yula*, 679 F. Supp. 2d 617 (E.D. Pa. 2010) ................................ 20

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) .......................... 20

*Glah v. Massachusetts Mutual Life Insurance Co.*, No. Civ. A. 03-2407, 2003 WL
   22872037 (E.D. Pa. Dec. 3, 2003) ..................................................... 15

*Goodwin v. Elkins & Co.*, 730 F.2d 99 (3d Cir. 1984) ................................. 10

*Hawthorne v. Fundamental Long Term Care Holdings, LLC*, No. 2:12cv1826, 2013 WL
   5273218 (W.D. Pa. Sept. 19, 2013) ............................................... 12, 13

*Horneffer v. St. Joseph Med. Ctr.*, Civ. No. 11-410, 2012 WL 983782 (D. Md. Mar. 21,
   2012) ....................................................................................... 16

*Hornicek v. Cardworks, Servicing, LLC*, Civ. No. 10-3631, 2011 WL 2623274
   (E.D. Pa. June 29, 2011) ................................................................. 13

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) .......... 19

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225 (3d Cir. 1998) ................. 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................. 7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ..................... 7

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110
   (3d Cir. 1993) ........................................................................ 8, 15, 16

*Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006) ......................... 9

*Rent-A-Center W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010) .......................... 7, 11

*Sarl v. A.M. Todd Co.*, No. 07-2727, 2008 WL 724607 (E.D. Pa. Mar. 18, 2008) ...... 9, 17, 18, 19

*Tague v. Hurd*, No. Civ. A. 04-5958, 2005 WL 1563350 (E.D. Pa. June 30, 2005) .............. 11, 15

*Way Servs., Inc. v. Adecco North America, LLC*, Civil No. 06-CV-2109, 2007 WL
   1775393 (E.D. Pa. June 18, 2007) ..................................................... 12

## STATUTES

18 U.S.C. § 1962 ..................................................................................................... 6

41 Pa. Stat. § 201 .................................................................................................. 6

7 Pa. Stat. § 6203 .................................................................................................. 6

7 Pa. Stat. § 6213 .................................................................................................. 6

9 U.S.C. § 2 ............................................................................................................ 7

9 U.S.C. § 3 .......................................................................................................... 20

## INTRODUCTION

Plaintiff Patricia Booth ("Plaintiff") signed a written agreement to arbitrate all claims related to her loan from Plain Green, LLC ("Plain Green"). Despite her agreement to arbitrate such claims, Plaintiff filed this putative class action against North American Banking Company ("NABC"), seeking to hold NABC liable for collecting the allegedly usurious loan on Plain Green's behalf. Because Plaintiff's claims against NABC are governed by the written arbitration agreement, Plaintiff is obligated to pursue those claims in arbitration proceedings – *not* in federal court.

NABC is now the third defendant in this lawsuit to move to compel arbitration. In prior motions, defendants First International Bank & Trust and BMO Harris Bank, N.A., discussed the legal principles by which a non-signatory may enforce an arbitration agreement. Though each motion to compel must be evaluated on its own merits, NABC's motion should be granted for the same reasons articulated by its co-defendants.

First, NABC's motion should be granted because the plain language of Plaintiff's loan contract requires arbitration of these claims. Plaintiff agreed to arbitrate any claim against Plain Green or its "related third parties," including its "servicing and collection representatives and agents, and each of their respective agents [and] representatives." Plaintiff also agreed to arbitrate the validity, enforceability, or scope of the arbitration provision itself. Thus, to the extent Plaintiff disputes whether her claims against NABC must be arbitrated, she must litigate that issue before the arbitrator and not this Court.

Second, regardless of which tribunal may decide arbitrability, NABC is entitled to enforce Plaintiff's arbitration agreement with Plain Green. Each of Plaintiff's claims is premised on the allegations that (1) the loan was illegal and void, and (2) NABC, on Plain Green's behalf,

facilitated repayment of the loan by transmitting ACH debit entries to Plaintiff's bank. Because the plain terms of the agreement require arbitration of such claims, NABC is entitled to enforce the agreement as a third-party beneficiary. And even if the agreement were unclear on this point, which it is not, NABC is entitled to arbitration under settled principles of agency and estoppel. Plaintiff's claims are intertwined with and dependent upon her agreement with Plain Green, and allege that NABC and Plain Green engaged in concerted misconduct. She cannot avoid her obligation to arbitrate merely by suing NABC instead of Plain Green itself.

Accordingly, NABC respectfully requests that the Court compel arbitration and dismiss or stay this action.

## BACKGROUND

### I.    Plaintiff Agrees to Arbitrate All Claims Related to Her Loan from Plain Green

On July 24, 2013, Plaintiff applied for and received a $1,000 loan from Plain Green. (Decl. of Peter Schwingler in Supp. of Mot. to Compel Arbitration Ex. 1, Decl. of Joel Rosette, hereinafter "Rosette Decl.," at ¶ 11 & Ex. 3 at 1-2; *see also* Compl. ¶ 74.) Plain Green is an online lender owned and operated by the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, a federally recognized Indian tribe. (Rosette Decl. ¶ 2; Compl. ¶ 15(a).) Plaintiff's loan was effective July 25, 2013, and gave Plaintiff the option to repay by ACH transfer. (Rosette Decl. Ex. 3.)

To obtain her loan, Plaintiff completed an online application through Plain Green's website. (Rosette Decl. ¶ 6; *see also* Compl. ¶ 74.) A Plain Green application proceeds in five steps. (Rosette Decl. ¶ 7.) In the first three steps, the customer provides personal and financial information, selects a loan amount, and confirms a payment schedule. (*Id.*) In the fourth step, the customer is provided a copy of the Consumer Loan Agreement itself, including the

2

arbitration provision and a "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT" disclosing the cost of credit to the consumer. (*Id.* ¶ 8.) After the customer chooses whether to receive the loan proceeds electronically or by U.S. Mail, the customer types her full name to provide an electronic signature (*Id.*) The customer also types the phrase "I Agree" in a box on the screen to indicate her acceptance of the loan terms. (*Id.*) During the fifth and final step, the customer is asked to verify the information provided in the application. (*Id.* ¶ 7.) If Plain Green approves the loan, the customer is directed to a "Thank You and Print Documents" page, from which the customer can print the Consumer Loan Agreement. (*Id.* ¶ 9.)

On July 24, 2013, Plaintiff e-signed a Consumer Loan Agreement with Plain Green and typed "I Agree" in the appropriate box to indicate her agreement to its terms. (Rosette Decl. Ex. ¶ 11 & Ex. 3 at 9.) Plaintiff accepted the loan proceeds of $1,000 on July 24. (Compl. ¶ 74.) Though she was entitled to cancel the loan, Plaintiff chose to retain the proceeds instead. (*See id.* ¶¶ 74-77 (alleging that Plaintiff received loan and subsequently made electronic payments).)

Plaintiff's Consumer Loan Agreement with Plain Green includes an arbitration provision requiring Plaintiff to arbitrate "any Dispute." (Rosette Decl. Ex. 3 at 6-7.) The term "Dispute" is defined as "any claim or controversy of any kind between you and us." (*Id.*) The term "us" is defined as "Lender [*i.e.*, Plain Green], Lender's affiliated companies, the [Chippewa Cree] Tribe, Lender's servicing and collection representatives and agents, and each of their respective agents, representatives, employees, officers, directors, members, managers, attorneys, successors, predecessors, and assigns." (*Id.* at 7; *see generally id.* at 1 (defining "Lender" as Plain Green).) The provision further clarifies that:

> [T]he term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future), including events that occurred prior to origination of your Loan and whether or

not a Loan is provided to you, based on any legal or equitable theory (contract, tort, or otherwise) and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). *A Dispute includes*, by way of example and without limitation, *any claim based upon a* tribal, *federal or state* constitution, *statute*, ordinance, regulation, *or common law, and any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.*

(*Id.* at 7 (emphases added).)  Plaintiffs's Consumer Loan Agreement highlighted the arbitration provision by stating, in bold, capital letters:

> **(a)  YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US;**
>
> **(b)  YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; AND**
>
> **(c)  YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US.**

(*Id.*)  The agreement informed Plaintiff that "any dispute you have with [Plain Green] or anyone else under this Agreement will resolved by binding arbitration," including "any dispute" alleged against "related third parties." (*Id.* (emphasis omitted).)  It also clarified that it "benefits and is binding on" Plain Green, its "servicing and collection representatives and agents," and "each of their respective agents [and] representatives." (*Id.*)

The arbitration agreement provides that Plaintiff may select either the American Arbitration Association ("AAA") or JAMS to administer the arbitration. (Rosette Decl. Ex. 3 at 7.)  Regardless of which party demands arbitration, Plaintiff is entitled to advancement of the filing fee and "any costs or fees charged by the arbitrator." (*Id.*)

4

Plaintiff's Consumer Loan Agreement provided her a right to opt out of the arbitration provision within sixty days. (Rosette Decl. Ex. 3 at 6.)  Plaintiff did not do so.  (*Id.* ¶ 14.)

## II.     Plaintiff Agrees to Repay the Loan Through ACH Transactions

Plain Green gives consumers the choice to repay their loans through Automated Clearing House ("ACH") transactions. (*See, e.g.*, Rosette Decl. Ex. 3 at 5, 9.)  The "ACH Network," as defined by Plaintiffs, is "a processing system in which financial institutions accumulate ACH transactions throughout the day for later batch processing." (Compl. ¶ 31.)  A transaction on the ACH Network begins when an accountholder authorizes a merchant, such as an online lender, to initiate ACH credit and debit entries to his or her account.  (*Id.* ¶ 36.)  The merchant then communicates the authorization to its Originating Depository Financial Institution ("ODFI"), a bank member of the ACH Network. (*Id.*)  The ODFI then transmits the authorized credit or debit entry to the accountholder's bank, which completes the transaction by posting the credit or debit to its customer's account.  (*Id.*)

When Plaintiff entered the July 2013 loan with Plain Green, she elected to receive and repay the loan proceeds through ACH transfers instead of U.S. mail. (Rosette Decl. Ex. 3 at 9.) Accordingly, she authorized Plain Green and its agents to initiate an ACH credit entry to her bank account to disburse the loan proceeds. (*Id.*)  She also authorized Plain Green and its agents to initiate debit entries to her bank account on each scheduled payment date. (*Id.*)

## III.    Plaintiff Files Suit Against NABC, Asserting Claims Based on the July 2013 Loan

Despite agreeing to arbitrate all claims related to the Plain Green loan, Plaintiff filed this putative class action against NABC and two other banks on October 11, 2013.  Plaintiff's individual claims against NABC are based on the allegation that NABC served as Plain Green's ODFI in connection with the July 2013 loan.  Specifically, Plaintiff alleges that NABC served as

the ODFI with respect to an August 2, 2013, debit transaction by which Plaintiff made a payment of $138.47. (Compl. ¶ 77.)

According to the Complaint, Plaintiff's April 2013 loan with Plain Green was an illegal "payday" loan that is void and unenforceable under Pennsylvania usury law. (Compl. ¶¶ 15(a), 29, 154-55, 166.) Plaintiff alleges that, by communicating the August 2, 2013 debit entry to her bank, NABC participated in the collection of an unlawful debt. (*Id.* ¶ 135.) Plaintiff further alleges that NABC's actions were made "on behalf" of Plain Green (or online lenders generally); that NABC conspired with Plain Green; and that NABC aided and abetted Plain Green's allegedly unlawful lending activity. (*Id.* ¶¶ 8-9, 73, 87, 143-44, 155.) Apart from its limited role in the processing of ACH transfers, however, Plaintiff alleges no other conduct by NABC.

Plaintiff seeks to represent a putative class of borrowers who allegedly entered illegal "payday" loans, and who repaid those loans through ACH transfers facilitated by NABC. (*Id.* ¶¶ 1, 87.) Based on the allegation that NABC served as Plain Green's ODFI, the Complaint asserts six claims against NABC: (1) violations of RICO, 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO, *id.* § 1962(d); (3) assumpsit; (4) aiding and abetting violations of Pennsylvania's maximum interest rates statute, 41 Pa. Stat. § 201; (5) aiding and abetting violations of the Pennsylvania consumer credit statute, 7 Pa. Stat. §§ 6203, 6213; and (6) unjust enrichment. (*See* Compl. ¶¶ 128-83.) Plaintiff seeks treble damages, injunctive relief, and attorney fees. (*Id.* at 59-62.)

## ARGUMENT

The Court should grant NABC's motion to compel arbitration because Plaintiff signed a valid, enforceable arbitration agreement that covers her claims against NABC. To the extent Plaintiff disputes her obligation to arbitrate, she must raise that issue before the arbitrator

pursuant to the plain terms of the agreement and the Supreme Court's decision in *Rent-A-Center W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010). And regardless of who decides arbitrability, the outcome is the same: NABC is entitled to enforce the arbitration agreement under principles of third-party beneficiary law, agency, and equitable estoppel.

## I.     The FAA Mandates Arbitration of This Dispute

The Federal Arbitration Act ("FAA") establishes a strong national policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA provides that arbitration agreements in transactions involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

A motion to compel arbitration under the FAA raises two threshold questions: (1) whether a valid, enforceable arbitration agreement exists; and, if so, (2) whether the scope of that agreement encompasses the dispute at hand. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). The Court's review is limited to the arbitration agreement itself. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). By contrast, challenges to the validity or enforceability of the contract containing the arbitration agreement must be decided in arbitration. *Buckeye Check Cashing, Inc. v Cardegna*, 546 U.S. 440, 445-46 (2006); *see also Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 182 (E.D. Pa. 2010). The Court must resolve any doubts concerning the scope of arbitrable issues in

favor of arbitration.  *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114-15 (3d Cir. 1993).

The FAA mandates arbitration here.  Plaintiff voluntarily signed an arbitration agreement that expressly requires arbitration of claims such as those she asserts against NABC.  She also agreed to delegate threshold arbitrability issues, such as the validity, scope, or enforceability of the arbitration agreement, to the arbitrator.

### A.    Plaintiff Voluntarily Entered a Binding Arbitration Agreement

By executing the Consumer Loan Agreement, Plaintiff agreed to arbitrate "any Dispute" she has with Plain Green or its related third parties, including "any issue concerning the validity, enforceability, or scope" of the Consumer Loan Agreement and "any claim or controversy of any kind" against Plain Green, its "servicing and collection representatives and agents," or "any of their respective agents [and] representatives."  (Rosette Decl. Ex. 3 at 7.)

Plaintiff assented to the arbitration agreement twice:  first when she e-signed the Consumer Loan Agreement, and then when she accepted the loan proceeds.  *See Fluke v. Cashcall, Inc.*, Civ. No. 08-5776, 2009 WL 1437593, at *1, *8 (E.D. Pa. May 21, 2009) (compelling arbitration under agreement that plaintiff e-signed); *see also Bird Peak Corp. v. Lawyers Title Ins. Corp.*, 107 F. App'x 240, 242 (2d Cir. 2004) (affirming dismissal in favor of arbitration where plaintiffs "accepted benefits" of insurance policies containing arbitration clauses).  Plaintiff then had sixty days to opt out of the arbitration agreement altogether.  (Rosette Ex. 3 at 6.)  She declined to do so.  (*Id.* ¶ 14.)

NABC has thus established the first prong under the FAA:  the existence of an agreement to arbitrate.

8

**B.      The Arbitration Agreement Encompasses Plaintiff's Claims**

The arbitration agreement covers Plaintiff's claims.   Under Third Circuit precedent, courts must construe arbitration clauses applying a "presumption of arbitrability" and compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co.*, 584 F.3d at 524; *see also Sarl v. A.M. Todd Co.*, No. 07-2727, 2008 WL 724607, at *7 (E.D. Pa. Mar. 18, 2008) ("So long as a party's claim of arbitrability is 'plausible,' an arbitrator, not a court, must interpret the contract."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (holding that arbitration may be denied only if assertion that arbitration agreement encompasses relevant dispute is "wholly groundless").

This Court's decision in *Clerk v. First Bank of Delaware* is instructive here.   735 F. Supp. at 170.   In *Clerk*, a plaintiff sought to represent a putative class of borrowers on claims that "payday" loans were illegal and void under Pennsylvania usury law.   *Id.* 173-74.   The plaintiff's loan agreement, however, required arbitration of "'all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement.'" *Id.* at 188. Finding it "clear that plaintiff's claims of usurious interest rates relate[d] directly to [the] Loan Agreement," the Court compelled arbitration.   *Id.*

Here, the arbitration agreement in Plaintiff's Consumer Loan Agreement is plainly susceptible of an interpretation encompassing Plaintiff's claims against NABC.   It requires arbitration of any "Dispute," defined as "any claim or controversy of any kind between" Plaintiff and Plain Green or its related third parties, including its "servicing and collection representatives and agents, and each of their respective agents."   (Rosette Decl. Ex. 3 at 7.)   The agreement provides that "Dispute" be given "its broadest possible meaning" and construed to include "all

claims or demands . . . based on any legal or equitable theory . . . regardless of the type of relief sought." (*Id.*) The agreement further provides that "Dispute" includes "any claim based upon a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and any issue concerning the validity, enforceability, or scope" of the Consumer Loan Agreement. (*Id.*) The Third Circuit recognizes that language of this type represents "as broad an arbitration provision as is usually encountered in the normal course." *Goodwin v. Elkins & Co.*, 730 F.2d 99, 111 (3d Cir. 1984).

Plaintiff's claims against NABC fall easily under that broad language. Each claim is premised on the alleged invalidity of the Consumer Loan Agreement, and each claim is based on actions NABC allegedly took on Plain Green's behalf in facilitating repayment of the loan. (*See* Compl. ¶¶ 1, 135-83.) The claims thus relate to the "validity" or "enforceability" of the Consumer Loan Agreement, and also implicate the "servicing and collection representatives and agents" of Plain Green, (Rosette Decl. Ex. 3 at 7), which, as Plaintiff alleges, "conduct[ed] and participate[d] in the collection of [her] unlawful debts," (Compl. ¶¶ 138, 143.) Because the arbitration agreement expressly covers both the type of claims Plaintiff asserts and the party against which she asserts them, the agreement is susceptible of an interpretation covering Plaintiff's claims against NABC. Indeed, as in *Clerk*, "it is clear that plaintiff's claims of usurious interest rates relate directly to [the] Loan Agreement." *See* 735 F. Supp. at 188. Consequently, Plaintiff must pursue those claims in binding arbitration.

## C.   Plaintiff Must Raise Any Disputes About the Validity, Scope, or Enforceability of the Arbitration Agreement Before the Arbitrator

If Plaintiff wishes to dispute whether her claims are subject to arbitration, she must do so before the arbitrator. It is well-settled that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,'" including the validity, scope, or enforceability of the arbitration agreement itself.

10

*Rent-A-Center*, 130 S. Ct. at 2777; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (holding that parties can agree that arbitrators should decide arbitrability). Courts will uphold such agreements where the agreement "clearly and unmistakably" delegates threshold issues of arbitrability. *Tague v. Hurd*, No. Civ. A. 04-5958, 2005 WL 1563350, at *1 (E.D. Pa. June 30, 2005) (quotation omitted).

Here, the arbitration agreement delegates such questions to the arbitrator. The agreement provides that "any Dispute . . . will be resolved by arbitration" and defines "Dispute" to include "any issue concerning *the validity, enforceability, or scope of . . . this Agreement to Arbitrate*." (Rosette Decl. Ex. 3 at 7 (emphasis added).) Courts have repeatedly found such language to constitute a clear delegation of "gateway" arbitrability questions to the arbitrator. *See Ariza v. Autonation, Inc.*, 317 F. App'x 662, 664 (9th Cir. 2009 (listing cases holding that delegations of "scope" or "validity" of arbitration agreement evinced "clear and unmistakable intent" to submit arbitrability to arbitrator).

In addition, the arbitration agreement incorporates the AAA and JAMS rules and procedures to the extent those rules and procedures do not contradict the Agreement to Arbitrate. (Rosette Decl. Ex. 3 at 7.) In this instance, the AAA and JAMS rules are in complete agreement with the express terms of the arbitration agreement. All three delegate arbitrability to the arbitrator. (*Compare id.* Ex. 3 at 7, *with* AAA Rule 7 ("[T]he arbitrator shall have the power to rule on . . . the existence, scope or validity of the arbitration agreement."), *and* Rule 11(c) of the JAMS Comprehensive Arbitration Rules and Procedures ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine

11

jurisdiction and arbitrability issues as a preliminary matter.").)[1]   This further confirms that Plaintiff clearly and unmistakably agreed to resolve threshold arbitrability issues in the arbitration itself.  *See, e.g., Way Servs., Inc. v. Adecco North America, LLC*, Civil No. 06-CV-2109, 2007 WL 1775393, at *4-5 (E.D. Pa. June 18, 2007) (holding that incorporation of AAA rules constitutes clear and unmistakable agreement to delegate arbitrability to arbitrator); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208-09 (2d Cir. 2005) (holding that non-signatory could compel arbitration of arbitrability under an agreement incorporating AAA Rule 7).

## II.   NABC Is Entitled to Enforce the Arbitration Agreement

Even if the Court were to decide threshold issues of arbitrability, the Court should still grant NABC's motion to compel.  Courts routinely permit non-signatories, like NABC, to enforce arbitration agreements based on principles of third-party beneficiary law, agency, or equitable estoppel.  Each of those principles is an independent basis for compelling arbitration here.

### A.   NABC Is a Third-Party Beneficiary of the Arbitration Agreement

Because arbitration is a matter of contract, the Third Circuit has recognized that "ordinary common law contract" principles govern whether non-signatories may enforce an arbitration agreement.  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 229 (3d Cir. 1998) (quotation omitted).  One such principle is the rule that third-parties may enforce contracts made for their benefit.  *Id.*; *see also Hawthorne v. Fundamental Long Term Care Holdings, LLC*, No. 2:12cv1826, 2013 WL 5273218, at *3 (W.D. Pa. Sept. 19, 2013) (holding that third-party

---

[1]  *See* Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, *available at* http://www.adr.org (last visited Dec. 18, 2013); JAMS Comprehensive Arbitration Rules & Procedures, *available at* http://www.jamsadr.com/rules-comprehensive-arbitration/ (last visited Dec. 18, 2013).

beneficiary may enforce arbitration agreement because third-party beneficiaries "enjoy[] the same rights and limitations as the contracting parties"). That principle requires arbitration of Plaintiff's claims against NABC.

When determining whether a non-signatory is a third-party beneficiary of an arbitration agreement, courts look to whether (1) the "parties to the contract express an intention to benefit the third party in the contract itself," or (2) "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at *3 (quotation omitted, alteration in original). In *Hornicek v. Cardworks Servicing, LLC*, for example, this Court applied third-party beneficiary law in compelling arbitration under facts similar to those alleged here. Civ. No. 10-3631, 2011 WL 2623274, at *3 (E.D. Pa. June 29, 2011). The plaintiff in *Hornicek* signed a credit card agreement that required arbitration with the lender's "agents, contractors, employees, officers, or other assignees . . . or any other third party that has been involved with . . . any purchasing, marketing, soliciting, servicing, or credit-reporting activity relating to [the] account." *Id.* (quotation omitted, alteration in original). When the plaintiff sued the third party hired to collect his account, the Court held that the reference to "servicing" in the arbitration clause encompassed the third party's alleged collection activities. *Id.* The Court thus granted the third party's motion to compel. *Id.*

The Court should reach the same result here. Both the Consumer Loan Agreement and the arbitration provision itself manifest an intent to benefit the financial institutions, such an NABC, whose services were needed to effect ACH transfers. As noted above, the Consumer Loan Agreement authorizes Plain Green and its "agents" or "representatives" to initiate ACH

credit and debit entries to Booth's bank account. (Rosette Decl. Ex. 3 at 8-9.) The agreement expressly provides that "this ACH Authorization to Debit Bank Account *inures to the benefit* of Plain Green, LLC, its affiliates, *agents*, *representatives*, employees, successors, and registered assigns." (*Id.* at 9 (emphases added).) The arbitration provision, in turn, requires Plaintiff to arbitrate "any Dispute," and defines "Dispute" to include any claim between Plaintiff and Plain Green, its "servicing and collection representatives and agents," or "any of their respective agents [and] representatives." (*Id.* at 7.) The agreement also provides that it "benefits and is binding upon" Plain Green, its "servicing and collection representatives and agents" and "any of their respective agents [and] representatives." (*Id.*)

Booth alleges that NABC, by initiating ACH debit entries related to the Consumer Loan Agreement, participated in "collecting" that loan on Plain Green's behalf. That is precisely the type of claim Plaintiff agreed to arbitrate. Because the terms of the arbitration agreement evince a clear intent to benefit third-party service providers like NABC, NABC is entitled to enforce the arbitration agreement and compel arbitration.[2]

**B.** **As an Alleged Agent of Plain Green, NABC Is Entitled to Enforce the Arbitration Agreement**

Plaintiff alleges that NABC committed the purportedly wrongful acts "on behalf of" Plain Green. Such allegations provide an additional ground for compelling arbitration.

---

[2] As noted by defendant First International, it is hardly surprising that this type of arbitration agreement was intended to benefit third-party service providers. (*See* Mem. in Supp. of Mot. to Compel Arbitration, Doc. 34-2, at 13-14.) If a borrower could circumvent his or her agreement to arbitrate merely by suing third parties, the entire purpose of the arbitration agreement would be defeated. Here, for example, Booth's claims are all premised on the allegation that her loan was illegal and void under Pennsylvania usury law. Any resolution of that issue will clearly impact Plain Green, even if Plain Green is not a party. Booth's agreement to arbitrate with third parties like NABC was thus necessary to prevent an end-run around the parties' agreement to arbitrate the validity of the loan transaction.

14

The Third Circuit has long held that agency principles permit non-signatories to a contract to invoke its arbitration clause in certain circumstances. *See, e.g., Pritzker,* 7 F.3d at 1121-22. In *Pritzker,* for example, the Third Circuit applied agency principles to compel arbitration of a signatory's claims that a non-signatory had "knowing[ly] participat[ed]" in another signatory's wrongdoing while performing services in connection with the contract. *See id.* at 1122. The court observed that it had previously applied agency principals to enforce arbitration agreements *against non-signatories* "where the interests of such parties are directly related to, if not congruent with, those of a signatory." *Id.* Accordingly, the court held that a non-signatory could enforce an arbitration agreement against a signatory plaintiff whose "own theory of liability demonstrates that [the non-signatory]'s interests are directly related to, if not predicated upon, [a signatory]'s conduct." *Id.*

Following *Pritzker,* district courts in this circuit, including this Court, have enforced arbitration agreements in favor of non-signatories under agency principles. In *Tague v. Hurd,* for example, this Court found that agents of a signatory to a contract could invoke its arbitration clause based on their "community of interest" with the signatory. 2005 WL 1563350, at *2. Similarly, in *Glah v. Massachusetts Mutual Life Insurance Co.,* this Court compelled arbitration of claims against non-signatories because the parties agreed that the non-signatories were agents of a signatory to the arbitration agreement. No. Civ. A. 03-2407, 2003 WL 22872037, at *2 (E.D. Pa. Dec. 3, 2003).

Here, as in *Pritzker,* agency principles allow NABC to compel arbitration under Plaintiff's "own theory of liability." *See* 7 F.3d at 1122. Plaintiff's claims against NABC are based entirely on the allegations that (1) the Consumer Loan Agreement with Plain Green is illegal and void, and (2) NABC was acting on behalf of, and in concert with, Plain Green in

facilitating the repayment of that loan.  For example, Plaintiff alleges that ODFIs, including NABC, "actively participate in this unlawful scheme by working on behalf of Out-Of-State Payday Lenders" such as Plain Green.  (Compl. ¶ 8.)  Indeed, the Complaint is replete with similar allegations, (*see, e.g., id.* ¶¶ 9, 73, 87, 137, 142), all predicated on the allegedly unlawful nature of the loan agreements and NABC's "participat[ion] in the collection of" the resulting debts, (*see, e.g., id.* ¶ 137).  Thus, just as in *Pritzker*, Plaintiff asserts that NABC "knowing[ly] participat[ed]" in Plain Green's purported wrongdoing while performing services in the connection with the Loan Agreement.  *See* 7 F.3d at 1122.  And Plaintiff's "own theory of liability" therefore demonstrates that NABC's interests are "directly related to, if not predicated upon," Plain Green's purported conduct.  *See id.*

Accordingly, Plaintiff's allegations permit NABC to compel arbitration of claims predicated on acts NABC allegedly took "on behalf of" Plain Green.

### C.   Plaintiff Is Estopped from Avoiding Arbitration of Her Claims Against NABC

The Court should grant NABC's motion to compel arbitration regardless of whether NABC is a third-party beneficiary or alleged agent.  Under settled principles of equitable estoppel, Plaintiff is estopped from avoiding arbitration of her claims against NABC.

The doctrine of equitable estoppel prevents a plaintiff from avoiding her agreement to arbitrate through artful pleading, "such as by bringing an action against a nonsignatory charged with acting in concert with a non-defendant signatory."  *Horneffer v. St. Joseph Med. Ctr.*, Civ. No. 11-410, 2012 WL 983782, at *4 (D. Md. Mar. 21, 2012); *see also Bannett v. Hankin*, 331 F. Supp. 2d 354, 360 (E.D. Pa. 2004) (applying equitable estoppel where "Plaintiff's RICO claim alleges that the enterprise consists of" signatories and non-signatories to an arbitration agreement, "yet Plaintiff elected not to sue [the signatory] directly, presumably an attempt to

make an end-run around the arbitration clause"). The Third Circuit in *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries, S.A.S.*, observed with approval the application of equitable estoppel to bind "a signatory to arbitrate with a non-signatory at the nonsignatory's insistence." 269 F.3d 187, 199-200 (3d Cir. 2001). It noted that courts have bound signatories to arbitrate with non-signatories "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations."

Under the doctrine endorsed by the Third Circuit in *E.I. DuPont*, courts in the Circuit have estopped signatories from avoiding arbitration against non-signatories in at least two circumstances. First, courts apply equitable estoppel if a "non-signatory is alleged to have engaged in 'substantially interdependent and concerted misconduct' with a signatory other than the plaintiff." *Sarl*, 2008 WL 724607, at *10 (quotation omitted). Second, courts apply the doctrine if "the claims at issue rely on the terms of the agreement or assume the existence of, arise out of, or relate directly to, the written agreement." *Id.* at *9. Both circumstances are present here.

First, as illustrated by this Court's decision in *Sarl v. A.M. Todd Co*, estoppel is warranted here because Plaintiff's claims allege "substantially interdependent and concerted misconduct" by NABC and Plain Green. 2008 WL 724607, at *10. In *Sarl*, the plaintiff asserted that three defendants engaged in concerted conduct amounting to, among other things, breach of the plaintiff's contract with one, but not all, of the defendants. *Id.* at *4-5. When the non-signatory defendants sought to invoke the contract's arbitration clause, the plaintiff objected that they lacked standing to enforce it. *See id.* at *9-10. This Court disagreed, holding that the plaintiff's

17

allegations that the signatory and non-signatories breached the contract through "substantially interdependent and concerted misconduct" estopped the plaintiff from avoiding arbitration. *Id.* at *10; *see also Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70 (2d Cir. 2005) (holding that allegations of concerted misconduct preclude plaintiffs from "escap[ing] the consequences of those allegations by arguing that the [non-signatory] and [signatory] defendants lack the requisite close relationship, or that plaintiffs' claims against the [non-signatory] defendants are not connected to [that] relationship").

That is precisely the case here. Plaintiff alleges a concerted "scheme" involving a "close business relationship[]" among NABC and Plain Green in which the two "conspired" to originate and collect on the purportedly illegal Consumer Loan Agreement with Plaintiff. (*See, e.g.*, Compl. ¶¶ 6-10 (describing the alleged concerted "scheme"); ¶¶ 97, 114, 131 (alleging "close business relationships" among "ACH Enterprise" participants, including NABC and Plain Green); ¶¶ 41, 48, 134 (alleging an "Origination Agreement" between lenders (or their agents) and OFDIs); ¶ 143 (alleging that NABC "intentionally conspired" with "ACH Enterprise" participants, including Plain Green); ¶¶ 155, 162, 167, 172 (alleging NABC aided and abetted Plain Green's purported misconduct).) Accordingly, equity estops Plaintiff from relying on her allegations of concerted misconduct to establish liability but disclaiming them to avoid arbitration. *See Sarl*, 2008 WL 724607, at *10; *Denney*, 412 F.3d at 70.

Second, Plaintiff is estopped from avoiding arbitration because "the claims at issue rely on the terms of the agreement or assume the existence of, arise out of, or relate directly to, the written agreement." *Sarl*, 2008 WL 724607, at *9. Plaintiff's claims against NABC are all based on the allegation that the Consumer Loan Agreement charged an interest rate that is illegal and void under Pennsylvania usury law. She seeks to hold NABC liable for initiating debit

transactions to facilitate collection of the loan despite having repeatedly authorized such transactions throughout the Agreement. This Court has previously found that claims, like Plaintiff's here, alleging that "payday" loans are illegal and void under Pennsylvania usury law "relate directly to [the] Loan Agreement" governing such loans. *Clerk*, 725 F. Supp. 2d at 188; *cf. In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 390-91, 402-403 (S.D.N.Y. 2003) (applying equitable estoppel to compel arbitration of claims against two non-signatories to a credit card agreement requiring arbitration because claims that non-signatories conspired with signatory to charge unlawful credit card fees were based on credit card agreement). Accordingly, Plaintiff is estopped from avoiding arbitration of her claims against NABC because they relate directly to the Consumer Loan Agreement.

That conclusion is underscored by this Court's decision in *Sarl v. A.M. Todd Co.* In *Sarl*, this Court estopped a plaintiff from avoiding arbitration of its claims against a non-signatory, in part, because the allegations required to prevail against the non-signatory were nearly the same as those that would have been necessary to prevail against a signatory. 2008 WL 724607, at *10. This case is no different. To prevail against NABC, Plaintiff would have to prove the same primary allegation as she would to prevail against Plain Green: that the Consumer Loan Agreement is illegal and void because it charges usurious interest rates. Accordingly, because Plaintiff's claims against NABC "rely on the terms of" the Consumer Loan Agreement or "assume the existence of, arise out of, or relate directly to" it, she is bound by the arbitration clause that governs the Agreement. *See id.* at *9-10.

In sum, both theories of equitable estoppel compel the conclusion that Plaintiff may not avoid arbitration of her claims against NABC.

19

### III.    The FAA Requires Dismissal or a Stay Pending Arbitration.

Under § 3 of the FAA, a court is required to stay actions subject to arbitration "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) ("[Section 3 of the FAA] provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration . . . ."). Moreover, courts are vested with the discretion to dismiss actions involving only arbitrable claims. *Friedman v. Yula*, 679 F. Supp. 2d 617, 629 (E.D. Pa. 2010).

NABC respectfully requests that the Court compel arbitration pursuant to the FAA and the Loan Agreement, and that it exercise its discretion to dismiss this action in its entirety or, in the alternative, to stay the action pending arbitration.

### CONCLUSION

For the reasons set forth above, the Court should grant NABC's motion to compel arbitration and dismiss or stay the claims against NABC.

20

Dated:  December 18, 2013

NORTH AMERICAN BANKING COMPANY
By Its Attorneys,

Todd A. Noteboom / JPM

Todd A. Noteboom (PA # 308557)
Peter J. Schwingler (*Pro hac vice*)
LEONARD, STREET AND DEINARD
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
(612) 335-1500
(612) 335-1657 fax
todd.noteboom@leonard.com
peter.schwingler@leonard.com

*and*

James T. Moughan
BRITT, HANKINS & MOUGHAN
Two Penn Center Plaza
Ste. 515
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-569-6936
215-569-3711 fax
jmoughan@britthankins.com

21

## CERTIFICATE OF SERVICE

I do hereby certify that on this 18th day of December, 2013, I electronically filed Defendant, North American Banking Company's, Motion to Compel Arbitration with the Clerk of the Court using the ECF system, which will send notification of the fling to the attorneys on that system.

James T. Moughan (PA # 33045)

BRITT, HANKINS & MOUGHAN
Two Penn Center Plaza
Ste. 515
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-569-6936
215-569-3711 fax
jmoughan@britthankins.com